UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| LAVONNE REYNOLDS WHITE, | ) | CIV. 11-5058-JLV |
| Individually and as Special | ) | |
| Administratrix for the Estate of | ) | |
| INEZ TWO ELK WHITE, | ) | ORDER |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the court is the government's motion for dismissal or for summary judgment.[1]  (Docket 23).  The court referred the motions to Magistrate Judge Veronica L. Duffy for a report and recommendation.  (Docket 38).  On April 25, 2014, Magistrate Judge Duffy filed a report recommending the court deny the government's motion to dismiss based on a lack of subject matter jurisdiction but grant the government's motion for summary judgment based on plaintiffs' failure to show any evidence of damages.  (Docket 43).  This court granted the parties additional time to submit objections to the magistrate judge's report and recommendation.  (Docket 46).  The parties timely filed objections.  (Dockets 47, 48).  The court reviews *de novo* those portions of the report and recommendation which are the subject of objections.  28 U.S.C. § 636(b)(1); Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).  The court

_____

[1]Except when referencing depositions, the court cites to the electronic-filing page number when referring to the record.

may then "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

For the reasons stated below, the government's objections are overruled and plaintiffs' objections are sustained in part and overruled in part.  The court adopts the report and recommendation of the magistrate judge as modified herein, and grants plaintiffs ninety (90) days to demonstrate their injuries were increased by the tribal officers' seven-hour delay in discovering them.

**A.     MAGISTRATE JUDGE'S FINDINGS OF FACT**

The government seeks to clarify that the Oglala Sioux Tribe Public Safety Commission ("OSTPSC") was first notified of Melissa Pattersen's accident at 1:29 a.m. Mountain Standard Time ("MST") (Docket 25-3 at p. 7) rather than sometime "[b]etween 12:30 a.m. and 1:30 a.m. on July 5, 2008," as the magistrate judge found.  (Docket 43 at p. 3).  Although the exact time that the Pattersen accident was reported to the OSTPSC tribal dispatch was within the time range provided by the magistrate judge, the court modifies the magistrate judge's report and recommendation to reflect that OSTPSC tribal dispatch first received notification of the Pattersen car accident at 1:29 a.m. MST.

The government's further objections to the magistrate judge's factual findings center on providing additional testimony attesting to the difficulty that one might have in viewing plaintiffs' ("Whites' ") car from the highway.  The

2

government's clarification that Officer Romero's second visit to the scene was to take photographs documenting the Pattersen accident is in agreement with the magistrate judge's factual findings.  See Docket 43 at p. 3.

**B.     MAGISTRATE JUDGE'S CONCLUSIONS OF LAW**

The government asserts the magistrate judge erred in finding:

1.     The Whites' administrative claim fairly apprised the OSTPSC of their injury in satisfaction of the presentment requirement for claims brought under the Federal Tort Claims Act ("FTCA").

2.     The tribal officers would be liable under South Dakota state law in accordance with the private person analogue; and

3.     That South Dakota's public duty doctrine is inapplicable to the Whites' claim.

(Docket 48).

Plaintiffs assert the magistrate judge erred in finding:

1.     The plaintiffs have adduced no evidence that they suffered damages as a result of the tribal officers' delay in discovering them.

(Docket 47 at pp. 1-2).

**C.     DEFENDANT'S OBJECTIONS**

**1.     Compliance with the Presentment Requirement of the Federal Tort Claims Act**

The government objects to the magistrate judge's determination that the Whites have satisfied the presentment requirement of the FTCA on largely the same grounds it argued in support of its motion to dismiss.  Compare Docket

3

42 at pp. 1-5, <u>with</u> Docket 48 at pp. 2-5.  Notably, the government does not object to the magistrate judge's analysis of the law—only that it reaches a different conclusion from the facts of this case.

To the extent the government's objections mirror the arguments made in support of its Fed. R. Civ. P. ("Rule") 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the court is not persuaded and adopts the law as applied by the magistrate judge.  <u>See</u> Docket 43 at pp. 6-15.  A plaintiff's administrative claim need only "fairly apprise[] the government of the facts leading to the claimant's injury . . . new theories of why those facts constitute tortious conduct can be included in a federal court complaint."  <u>FGS Constructors, Inc. v. Carlow</u>, 823 F. Supp. 1508, 1513 (D.S.D. 1993), <u>aff'd in part, rev'd on other grounds</u>, 64 F.3d 1230 (8th Cir. 1995) (The United States Court of Appeals for the Eighth Circuit affirmed the district court's ruling regarding the plaintiff's FTCA suit against the United States.); <u>see</u> <u>also</u> <u>Mader v. United States</u>, 654 F.3d 794, 801 (8th Cir. 2011) (The FTCA's presentment requirement "provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit.").  Moreover, district courts are to " 'liberally construe an administrative charge for exhaustion of remedies purposes.' "  <u>Allen v. United</u>

4

States, 590 F.3d 541, 544 (8th Cir. 2009) (quoting Parisi v. Boeing Co., 400

F.3d 583, 585 (8th Cir. 2005)) (further citations omitted).

Here, it is clear that the Whites' administrative claim fairly apprised the

United States Department of the Interior ("Department") of the facts leading to

the Whites' injury, namely that the tribal police were present at the scene of the

Whites' accident and nonetheless failed to discover them as they lay

unconscious in their nearby car.  Moreover, the Whites' administrative claim

provided sufficient information to allow the Department to meaningfully

investigate, consider, and determine the status of the Whites' claim.  Each of

the government's specific objections to this finding is addressed in turn.

### a.    The Temporal Proximity of the Pattersen Accident

The government first disputes the Whites' administrative claim fairly

apprised the Department that the Whites' accident was so "close in time" to the

Pattersen accident that the Department would have known to consider it in its

examination of the Whites' claim.  The court finds the language used in the

Whites' administrative claim not to be the "lengthy and indefinite window of

time" the government characterizes it as, whereby an adequate investigation of

the Whites' claim would be impossible.[2]  See Docket 48 at p. 3.  At most, all

_____

[2]"In the late evening hours of 7/4/08 or early morning hours of 7/05/08"
and between "11 p.m. to 1 a.m."  (Dockets 25-1 at p. 1, 25-2 at p. 1).

that was required of the Department was to investigate the OSTPSC's tribal dispatch records for the night of July 4, 2008, and the morning of July 5, 2008—dispatch records that the OSTPSC possessed.  (Docket 43 at p. 15).

Even a cursory review of those dispatch records reveals there was another car accident also involving cattle along the same stretch of highway at approximately 1:30 a.m. on July 5, 2008—only thirty minutes beyond the time frame the Whites alleged their own accident occurred.  <u>Compare</u> Dockets 25-1, 25-2, <u>with</u> Docket 25-3 at p. 7.  Moreover, the Department had the benefit of hindsight and all of the OSTPSC's tribal dispatch records available to it when investigating the Whites' administrative claim.   <u>See</u> Docket 48 at p. 3.  The court finds the Whites' administrative claim presented sufficient facts to fairly apprise the Department of the facts leading to the Whites' alleged injuries.  The government's objection that the Whites' administrative claim failed to fairly apprise the Department of the facts leading to the Whites' alleged injuries is overruled.

### b.    The Naming of Tribal Officers in the Administrative Claim

The court disagrees with the government's objection that the Whites naming of Officer Romero in their claim adds nothing to apprise the Department of the Pattersen accident.  The Whites did not provide an extensive "laundry list" of tribal officers who responded to the accident scene.  (Docket 48

6

at p. 3).  Rather, the Whites' administrative claim named only four officers, including Officer Romero, who in fact responded twice to the Pattersen/White accident scene.  <u>See</u> Dockets 25-1 at p. 1, 25-2 at p. 1, 43 at p. 15.  The Whites' claim fairly apprised the Department that those four officers should be consulted in investigating and examining the merits of the Whites' administrative claim.  Again, the OSTPSC possessed the incident reports indicating Officer Romero had investigated a similar accident, on the same stretch of highway, on the same date, at approximately the same time.  The court finds that the Whites' identification of specific officers provides further support that the Department was fairly apprised of the facts leading to the Whites' alleged injuries.

### c.  The Current State of the Whites' Claim

The government alleges the Whites' claim currently before the court on its motion for summary judgment is not the claim that was contained in either the Whites' administrative claim or their federal complaint, and the court is without jurisdiction to adjudicate the complaint.  (Docket 48 at pp. 4-5).  The government contends the Whites are attempting to retool their original claim in an effort to avoid summary judgment.  <u>Id.</u> at 4.  The government argues it was not fairly apprised of the facts surrounding the Whites' new claim that the

7

tribal officers were negligent in investigating the scene of the Pattersen accident.  Id. at 5.  The government's objection misses the mark.

The court agrees with the magistrate judge's finding that the main thrust of the Whites' administrative claim is "tribal police were present at the scene of their accident and, through their [tribal police's] negligence, failed to discover the Whites as they lay unconscious in their vehicle nearby." (Docket 43 at p. 14).  The court also agrees with the magistrate judge that for purposes of apprising the Department of the facts leading to their injury, the Whites need not specify whether the tribal officers were present at the scene of the accident due to a report of the Whites' accident or due to a report of the Pattersen accident.  (Docket 43 at p. 14).  Under either circumstance, the tribal officers were present at the scene and they failed to discover the Whites, which is alleged in both the administrative claim and the federal complaint.

When investigating and analyzing the Whites' administrative claim, the Department had sufficient information indicating tribal officers were present at the scene of the Whites' accident and those officers nonetheless failed to discover them.  This information in conjunction with the close temporal and geographic proximity of the White and Pattersen accidents, the cattle-related nature of the accidents, and the named investigating officers "provide[d] the federal agenc[y] a fair opportunity to meaningfully consider, ascertain, adjust,

8

determine, compromise, deny, or settle" the Whites' claim.  <u>Mader</u>, 654 F.3d at 801.  The Whites' subsequent clarification of the facts supporting their theory of negligence after further discovery does not indicate the Department was unaware or hamstrung in its ability to investigate the facts leading to the Whites' alleged injury.  <u>See</u> <u>FGS Constructors, Inc.</u>, 823 F. Supp. at 1513.  The court finds the Whites' administrative claim fairly apprised the Department of the facts leading to their alleged injury.  The government's objection that the Whites failed to satisfy the FTCA's presentment requirement is overruled.

Contrary to the assertions of the government, the Whites have not amended nor attempted to amend their original federal complaint in their brief resisting summary judgment.  (Docket 48 at p. 4).  The court concludes the magistrate judge's quote, "the Whites' claim *now* rests on the allegation that the OSTPSC officers were negligent in responding to the Pattersen accident" was made in reference to whether any facts were in dispute for purposes of deciding the government's Rule 12(b)(1) motion to dismiss.  (Docket 43 at p. 9) (emphasis added) <u>see</u> <u>also</u> Docket 48 at p. 4.  As the magistrate judge noted, a Rule 12(b)(1) motion to dismiss "can be decided in three ways: at the pleading stage, like a Rule 12(b)(6) motion; on undisputed facts, like a summary judgment motion; and on disputed facts."  <u>Jessie v. Potter</u>, 516 F.3d 709, 712 (8th Cir. 2008) (citing <u>Osborn v. United States</u>, 918 F.2d 724, 728-30 (8th Cir.

9

1990)).  By determining the operative facts were no longer in dispute, the
magistrate judge was able to analyze the government's Rule 12(b)(1) motion as
a motion for summary judgment without the need to hold an evidentiary
hearing.

Refining the factual issues in dispute for trial is often a primary purpose
in briefing a motion for summary judgment.  Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 248-52 (1986).  Clarifying factual issues is distinguishable from
a party attempting to "unilaterally dismiss or withdraw his federal claims in a
memorandum in opposition to a motion for summary judgment so as to strip
the court of its jurisdiction" as alleged by the government.  Thomas v. United
Steelworkers Local 1938, 743 F.3d 1134, 1140 (8th Cir. 2014); see also Docket
48 at p. 4 n.2.

The genesis of the Whites' claim has been and continues to be that tribal
officers were present at the scene of their accident—whether due to a report of
their own accident or the Pattersen accident—and nonetheless negligently
failed to discover them as they lay unconscious in their nearby vehicle.  The
government's objection that the Whites are attempting to amend their
complaint is overruled.  The court finds the magistrate judge properly denied
the government's Rule 12(b)(1) motion to dismiss.

10

## 2.      Private Person Analogue Duty of Care

The government objects to the magistrate judge's finding that the plaintiffs have established the tribal officers would be liable under South Dakota state law.  These objections are overruled.  For the reasons set forth below, the court adopts the magistrate judge's determination that Officer Romero owed the Whites a duty of care under the private person analogue, and the court agrees a reasonable jury might conclude that Officer Romero breached that duty by failing to discover the Whites' car.

Under the FTCA, the government "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674.  In United States v. Olson, the Supreme Court held  the private person analogue requires courts to "look to the state-law liability of private entities, not to that of public entities, when assessing the Government's liability under the FTCA 'in the performance of activities which private persons do not perform.' "  United States v. Olson, 546 U.S. 43, 46 (2005) (quoting Indian Towing Co. v. United States, 350 U.S. 61, 64 (1955)).  As the magistrate judge noted, " 'like circumstances' do not mean identical circumstances and . . . courts must 'look further afield' in determining whether state law would hold a private person liable under like circumstances."  (Docket 43 at p. 28) (quoting Olson, 546 U.S. at 46).  The appropriate inquiry under the private

11

person analogue is not whether a private person is actually able to perform a given act, but rather, if that person was allowed to but breached his duty of care in so doing, would he be liable under local law.  See Docket 43 at p. 26 (citing Indian Towing Co. v. United States, 350 U.S. 61, 66-67 (1955).

As the magistrate judge indicated, the government is liable "under circumstances where . . . a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  In this case, where the alleged negligent act occurred on an Indian reservation, the Eighth Circuit held "where an act or omission occurs within the territorial boundaries of both a tribal reservation and a State, 'the law of the place' for purposes of the FTCA is the law of the State." LaFromboise v. Leavitt, 439 F.3d 792, 796 (8th Cir. 2006).  Therefore, "[b]ecause the facts alleged by Ms. White in support of her claim took place in South Dakota, it is the law of the state of South Dakota that applies to determine whether the government may be held liable."  (Docket 43 at pp. 17-18) (citing Owen v. United States, 645 F. Supp. 2d 806, 826 (D.S.D. 2009) (citing LaFromboise, 439 F.3d at 794)).

Under South Dakota law, " '[i]n order to prevail in a suit based on negligence, a plaintiff must prove duty, breach of that duty, proximate and factual causation, and actual injury.' "  Hendrix v. Schulte, 736 N.W.2d 845,

847 (S.D. 2007) (quoting Fisher Sand & Gravel Co. v. S.D. Dep't of Transp., 558 N.W.2d 864, 867 (S.D. 1997)).  The existence of a duty is usually a question of law to be determined by the court.  Id. at ¶ 8 (citing Erickson v. Lavielle, 368 N.W.2d 624 (S.D. 1985)).  "A duty can be created by either statue or common law." Id. (citing Kuehl v. Horner Lumber Co., 678 N.W.2d 809 (S.D. 2004).

The South Dakota legislature passed a "Good Samaritan" statute shielding a potential rescuer from civil liability stemming from a rescue attempt.

> No peace officer, conservation officer, member of any fire department, police department and their first aid, rescue or emergency squad, or any citizen acting as such as a volunteer, or any other person is liable for any civil damages as a result of their acts of commission or omission arising out of and in the course of their rendering in good faith, any emergency care and services during an emergency which is in their judgment indicated and necessary at the time. Such relief from liability for civil damages extends to the operation of any motor vehicle in connection with any such care or services.

> Nothing in this section grants any relief to any person causing any damage by his willful, wanton or reckless act of commission or omission.

SDCL § 20-9-4.1 (2014); see also In re Certification of Question of Law, 779 N.W.2d 158, 163 (S.D. 2010) (interpreting the meaning of rendering emergency care or services to include those actions taken by a rescuer prior to actually taking affirmative life-saving action and extending a rescuer's civil suit immunity to include claims made by third-party bystanders).

With respect to this case, Officer Romero is clearly within South Dakota's Good Samaritan statute for his actions taken during his 1:30 a.m. visit to the accident scene on July 5, 2008.  Officer Romero was responding to an emergency situation (Ms. Pattersen's accident) and is shielded from civil liability from all third-party bystanders, including the Whites.  SDCL § 20-9-4.1; see also In re Certification of Question of Law, 779 N.W.2d at 163; (Docket 43 at p. 28).  However, whether Officer Romero owed the Whites a duty of care during his 4:30 a.m. return visit to the accident scene to further investigate and document the scene of the Pattersen accident requires separate analysis.

### a.    General Duty of Care

"In negligence law, 'duty' is simply 'an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " Sullivan v. City of Sacramento, 235 Cal. Rptr. 844, 846 (Cal. Ct. App. 1987) (quoting Prosser & Keeton on Torts § 53, p. 358 (5th ed. 1984)); see also Tipton v. Town of Tabor, 567 N.W.2d 351, 357 (S.D. 1997) ("A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct to another.").  As a general rule, courts should look to the following factors to determine if a duty of care exists:

> Foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connections

between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach and the availability, cost, and prevalence of insurance for the risk involved.

Sullivan, 235 Cal. Rptr. At 846 (quoting Davidson v. City of Westminster, 649 P.2d 894, 897 (Cal. 1982)).  Furthermore, as Chief Justice Cardozo held in the tort law hornbook staple of Palsgraf v. Long Island R.R. Co., "[t]he risk . . . to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension."  162 N.E. 99, 100 (N.Y. 1928).

Under South Dakota law, "[a] noncontractual duty may be imposed by common law, statute, implication or operation of law, public policy, or from a failure to exercise that care which a reasonable person would exercise under like circumstances."  F & M Agency v. Dornbush, 402 N.W.2d 353, 356–57 (S.D. 1987) (citing 65 C.J.S. Negligence § 4(7) (1966); Restatement (Second) of Torts § 285 (1965); Albers v. Ottenbacher, 116 N.W.2d 529, 531 (S.D. 1962)). The South Dakota Supreme Court has  instructed its "trial courts to use the legal concept of foreseeability to determine whether a duty exists."  Mid-W. Elec., Inc. v. DeWild Grant Reckert & Assocs. Co., 500 N.W.2d 250, 254 (1993). In the context of the duty of care owed by a professional, the Mid-Western Electric Court noted that " 'the extent of [defendant's] duty may best be defined

15

by reference to the foreseeability [sic] of injury consequent upon breach of that duty.' " Id. (quoting A.R. Moyer, Inc. v. Graham, 285 So.2d 397, 400 (Fla. 1973)) (further citations omitted).

As the magistrate judge noted, the Supreme Court's decision in Olson reiterated its holding in Indian Towing that courts must look "further afield" in determining whether a private person would be held liable under local law for purposes of the FTCA and in reaching this determination, "like circumstances" do not mean "identical circumstances."  (Docket 43 at p. 28); see also Olson, 546 U.S. at 46; Indian Towing Co., 350 U.S. at 64.  Although the court must look to South Dakota law to determine liability under the private person analogue, the Eighth Circuit and this district have previously approved the consideration of other reliable materials and standards to help the court reach "the most just and reasoned analysis."  Hurst v. United States, 739 F. Supp. 1377, 1381 (D.S.D. 1990) (quoting Passwaters v. Gen. Motors Corp., 454 F.2d 1270, 1278 (8th Cir. 1972)) ("[W]hen a federal court is faced with the problem of determining state law without decisions of the state directly controlling, the court may be guided by the law which in its opinion provided the most just and reasoned analysis.").

In any car accident, it is foreseeable that multiple parties may be injured by the same, ongoing dangerous condition on a public thoroughfare.  It is also

16

foreseeable that a cursory or insufficient investigation and inspection of an accident scene would fail to discover all persons injured as a result of the dangerous condition.  Here, where a fence was broken, multiple cows or cow carcasses were present on the highway, and there were visible skid marks on the highway and the Zimiga approach, the foreseeability of an undiscovered accident victim increases significantly.  See infra Part C.2.b.  While it is clear that Officer Romero was under no obligation to return to the scene of the Pattersen/White accident to continue his investigation and documentation, once he did so he was under an obligation "to exercise that care which a reasonable person would exercise under like circumstances." F & M Agency, 402 N.W.2d at 356–57.

### b.        Duty of Care Owed to a Third Party

In addition to imposing a general duty to exercise reasonable care, the South Dakota Supreme Court observed that " 'one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.' " McGuire v. Curry, 766 N.W.2d 501, 506 (S.D. 2009) (quoting Hoekman v. Nelson, 614 N.W.2d 821, 825 (S.D. 2000)).  The South Dakota Supreme Court also adopted section 324A of the Restatement (Second) of Torts which imposes liability on:

> One who undertakes, gratuitously or for consideration, to render
> services to another which he should recognize as necessary for the

17

protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Schoenwald v. Farmers Co-op. Ass'n of Marion, 474 N.W.2d 519, 521 (S.D. 1991) (citing Restatement (Second) of Torts § 324A (1965); see also Cuppy v. Bunch, 214 N.W.2d 786 (1974) (adopting section 324A of the Restatement (Second) of Torts).

The circumstances existing at the time of Officer Romero's 4:30 a.m. daylight visit included a broken fence, at least two dead cows in distinct locations, and substantial skid marks on the highway and Zimiga approach. (Docket 25-7).  Moreover, Officer Romero testified that Ms. Pattersen's car came to rest on or near the Zimiga approach approximately eighty feet from the point of impact on the highway.  (Dockets 25-8 at p. 12, 48 at p. 2).  Herbert Zimiga testified there were marks on the highway and the approach where Ms. White applied her brakes before her car ultimately settled further downhill in the ravine.  See Docket 25-7 at pp. 21-22).  The Whites' car ultimately traveled 100 yards from the point of impact on the highway.  (Docket 25-3 at p. 2).  The

18

distance between the Whites' car and Ms. Pattersen's car would be approximately seventy-five yards.

Herbert Zimiga also testified his brother, Robert Zimiga, informed him there was a new, unidentified car in the ravine that he (Robert) was able to view from the highway because he did not "get out and go down and look" into the Whites' car.[3]  (Docket 25-7 at pp. 19-20).  Finally, Officer Romero's testimony implies the presence of a not-insignificant number of plastic shards present at the accident scene that did not match the coloring of Ms. Pattersen's car.  See Docket 25-8 at p. 21.[4]

Although the court can find no South Dakota case law directly controlling and factually similar to this case, the court, in looking further afield to determine whether a private person would be liable under like circumstances, concludes that Officer Romero undertook to render services to Ms. Pattersen when he returned to the accident scene to continue his

---

[3]Herbert Zimiga may have been informed of the location of the Whites' car by Robert prior to his morning walk and used this knowledge to help locate the car.  See Docket 25-7 at pp. 19-20).  At the very least, Herbert Zimiga's testimony introduces evidence that at least one passerby (Robert) without knowledge of the car was able to view the Whites' car from the highway, despite not having investigated and photographed the accident scene as did Officer Romero.

[4]After initially testifying that "pretty much all" of the plastic shards at the accident scene matched the "goldish or tannish color" of Ms. Pattersen's car, Officer Romero reconsidered and stated that only a "majority" of the plastic shards he saw matched that color.

19

investigation of the site.  Officer Romero failed to recognize physical evidence indicating that his investigation of the accident scene also was necessary for the protection of undiscovered accident victims.  Officer Romero's failure to exercise reasonable care while performing his investigation and documentation of the accident scene increased the risk that the Whites would remain undiscovered and suffer further injury as a result of their delayed access to medical care, triggering a duty of reasonable care under the first prong of section 324A.

The risk of injury to the Whites was increased by their immobilized and incapacitated state.  "Immobilized accident victims are in precarious positions and are completely dependent on the skill and care of investigating officers and rescue personnel for their lives and safety."  Drake v. Drake, 618 N.W.2d 650, 658–59 (Neb. 2000).[5]  The Nebraska Supreme Court held that "[a] seriously injured and undiscovered victim of an automobile accident is foreseeably endangered by an unreasonable accident investigation."  Id. at 659.

In Drake, a husband and wife were in a car accident and although the husband was discovered and transported via ambulance to a hospital, the

---

[5]Although Drake represents only persuasive authority, the analysis applied by the Nebraska Supreme Court in determining whether defendants owed the plaintiff a duty of care is applicable here where there is no South Dakota case law directly on point to help the court reach the "most just and reasoned analysis."

20

immobilized wife was not found despite lying only twenty feet away.  <u>Id.</u> at 655.
Emergency personnel eventually found Mrs. Drake approximately thirty
minutes later, but the second ambulance had already been sent away.  <u>Id.</u>  The
ambulance returned to the scene and picked up Mrs. Drake approximately one
hour later.  <u>Id.</u>  Mrs. Drake suffered an "anoxic/hypoxic brain injury with
associated complications."  <u>Id.</u> (quotation marks omitted).  The Nebraska
Supreme Court held that certain rescue personnel owed Mrs. Drake a duty of
care "in conducting the accident investigation," and were required "to conform
to the legal standard of reasonable conduct in light of the apparent risk."  <u>Id.</u> at
659.

Here, the Whites also were incapacitated, immobilized and unable to
signal emergency personnel.  They were wholly dependent on the level of care
exercised by Officer Romero in investigating the Pattersen accident scene.  The
site of the Whites' accident was virtually coextensive with the scene of Ms.
Pattersen's accident.  Perhaps only seventy-five yards separated the two cars.
Physical evidence indicated the presence of additional car accident victims
through on- and off-highway skid marks, a broken fence, the presence of non-
matching plastic shards not the color of Ms. Pattersen's car.  Officer Romero
could see all these things during daylight hours.  Based on the facts and
circumstances existing at the time of Officer Romero's 4:30 a.m. investigation,

21

it is apparent that the presence of additional car accident victims was foreseeable. Officer Romero should have recognized through his investigation and documentation of the Pattersen accident that undiscovered accident victims also were present at the scene. Furthermore, the Whites bore a high risk of increased injury stemming from Officer Romero's failure to exercise reasonable care during his investigation and documentation of the accident scene.

The court finds Officer Romero owed the Whites a duty of reasonable care when investigating the Pattersen/White accident scene. The government's objections with regard to whether a duty of care arose under the private person analogue are overruled.

### 3.    Inapplicability of South Dakota's Public Duty Doctrine

The government objects to the magistrate judge's finding that South Dakota's public duty doctrine is inapplicable to the facts of this case. For the reasons set forth below, the court adopts the magistrate judge's determination that South Dakota's public duty doctrine is inapplicable to the facts of this case.

The government argues that the facts of this case are not akin to Walther v. KPKA Meadowlands Ltd. P'ship, 581 N.W.2d 527 (S.D. 1998), because Officer Romero was not responding to the Whites' accident but rather to

22

Ms. Pattersen's accident and because he claims to have had no knowledge of the Whites' accident.  (Docket 48 at p. 8).  The government alleges the Whites must establish that the OSTPSC owed them a special duty of care—a burden the government asserts they failed to satisfy.  Id.

Plaintiff Walther was assaulted by her boyfriend.  Walther, 581 N.W.2d at 530.  The responding law enforcement officer saw Walther lying in a pool of blood, and, believing Walther to be dead, shut the apartment door, called for assistance and specifically refused an offer of medical assistance for Walther.  Id.  As a result, Walther was forced to wait eighteen minutes after the officer first arrived before receiving medical care.  Id.

The South Dakota Supreme Court held that the public duty doctrine did not apply because Walther was not claiming the government "fail[ed] to enforce a law to protect her from the acts of a third party."  Id. at 538 (citing Tipton v. Town of Tabor, 567 N.W.2d 351, 357 (S.D. 1997)).  Rather, Walther claimed she was harmed by the officer's "failure to seek medical help once he came upon the scene."  Id.  The Court concluded the officer did more than fail to aid Walther:  "[the officer's] actions may have delayed [Walther's] receipt of much needed medical treatment."  Id.

As the magistrate judge noted, "[t]he heart of the Whites' claim[] is that there were facts from which Officer Romero should have discerned that a

23

second vehicle had been in an accident with the cows that [same] night."
(Docket 43 at p. 33).  The Whites are not claiming Officer Romero failed to
protect them from the acts of a third party.  See, e.g., Sorace v. United States,
CIV. 13-3021-RAL, Docket 18 (D.S.D. May 16, 2014) (FTCA suit alleging the
Rosebud Sioux Tribal Police Department acted negligently by failing to stop a
car driven by an intoxicated driver.  The court dismissed the suit for failure to
state a claim).  The Whites claim Officer Romero's negligent actions at the
accident scene harmed them, and, like Walther, caused a delay in timely
access to medical care.  The public duty doctrine is inapplicable to this case
and the government's objection is overruled.

**D.     PLAINTIFFS' OBJECTIONS**

      **1.     Existence of Damages**

The magistrate judge recommended granting the government's motion for
summary judgment because the plaintiffs failed to show the existence of any
damages.  (Docket 43 at p. 36).  Ms. White, relying on common sense and the
doctrine of *res ipsa loquitor*, objects to the magistrate judge's finding and
asserts she sufficiently alleged damages of pain and suffering stemming from
being left undiscovered in a wrecked car for eleven hours.  (Docket 47).  Ms.
White also requests that "[t]he [c]ourt . . . give[] plaintiffs leave of Court to
submit medical records showing the extent of their injuries, an issue that was

not adequately explored, considered, or given any priority in the briefing by the parties below." Id. at 2.

The South Dakota Supreme Court made clear in Walther that plaintiffs alleging a cause of action due to an officer's negligence "bear the burden of proving that [the officer's] actions somehow caused, contributed, or increased [their] injuries." Walther, 581 N.W.2d at 538.

For the reasons set forth in the magistrate judge's report and recommendation, the court is not persuaded the Whites sufficiently proved damages for pain and suffering stemming from the time of their accident until they were discovered. (Docket 43 at pp. 33-36). Inez Two Elk White's testimony was not preserved prior to her passing. (Docket 25 at p. 2). Lavonne Reynolds White testified she only remembers hitting a cow, waking up in a hospital, and nothing in between. (Docket 25-6 at p. 16). Based on this record and Ms. White's own testimony, no evidence exists indicating that the Whites suffered emotional distress or pain and suffering. Plaintiffs' objection that they sufficiently demonstrated the existence of damages is overruled.

With respect to Ms. White's request for leave to submit medical records or other medical evidence documenting the extent of the Whites' injuries, the court finds this request meritorious. The government first asserted the OSTPSC initially received notice of the Whites' accident on July 5, 2008, at

25

11:23 a.m., and law enforcement responded immediately thereafter.  (Docket 24 at pp. 13-14).  The government argued the Whites could not demonstrate any injury because the OSTPSC did not delay in rendering emergency services. Id.  As discussed above and in the magistrate judge's report and recommendation, this argument is specious in that it fails to address the Whites' primary claim that Officer Romero should have discovered the Whites during his investigation of the Pattersen accident scene.  To the extent the issue of damages was not the subject of careful analysis previously, the court finds that plaintiffs' alleged damages are in issue.  The plaintiffs bear the burden of demonstrating that damages do in fact exist as a result of Officer Romero's negligence.  Walther, 581 N.W.2d at 538.

Under Rule 56(e), "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .  give an opportunity to properly support or address the fact."  Fed. R. Civ. P. 56(e).  In this case, where neither party fully addressed the issue of whether the Whites' injuries were increased by the delay in receiving medical care and, if so, to what extent, the court finds that additional discovery and briefing on this limited issue is appropriate.

Because Officer Romero was shielded from liability stemming from his July 5, 2008, 1:30 a.m. visit to the accident scene under South Dakota's Good

26

Samaritan statute, he cannot be found liable for any increase to the Whites'
injuries until his 4:30 a.m. visit to the accident scene.  Therefore, the court
finds as a matter of law that, for purposes of proving and calculating damages,
the period of delay the Whites were forced to endure is approximately seven
hours.[6]  Furthermore, the Whites bear the burden of demonstrating the delay
in medical care incrementally increased or exacerbated their injuries.  See
Walther, 581 N.W.2d at 538.  Simply submitting medical records and asserting
that the seven-hour delay increased their injuries is insufficient at the
summary judgment stage.  See  Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556
U.S. 662, 677-687 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 560-63
(2007).

The court will re-open discovery for ninety days following the date of this
order for the limited purpose of ascertaining the extent to which the Whites'
injuries were increased or exacerbated as a result of their seven–hour delay in
receiving medical care, if any.

**ORDER**

Based on the above analysis, it is hereby

---

[6]Seven hours represents the approximate time difference between Officer
Romero's second visit to the accident scene on July 5, 2008, at 4:30 a.m. and
when the OSTPSC was notified of the Whites' accident scene on July 5, 2008,
at 11:23 a.m.

ORDERED that the defendant's objections (Docket 48) to the report and recommendation are overruled.

IT IS FURTHER ORDERED that the plaintiffs' objection (Docket 47) is granted in part and denied in part.

IT IS FURTHER ORDERED that discovery limited to the issue of whether the plaintiffs' injuries were increased or exacerbated as a result of a seven-hour delay in receiving medical care is opened for a period of ninety (90) days.

IT IS FURTHER ORDERED that the report and recommendation (Docket 43) is adopted in part and modified in part.

IT IS FURTHER ORDERED that defendant's motion (Docket 23) is denied with respect to the motion for dismissal and judgment is reserved with respect to the motion for summary judgment.

Dated September 24, 2014.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE